The first case today is 13-1577, United States v. Maria Ulloa. Good morning. My name is Bjorn Lange and I appear for the appellant to Maria Ulloa. She was convicted by a New Hampshire jury, 10 counts of filing fraudulent claims for income tax refunds. Two key issues are whether the trial judge's limitation on the jury's use of evidence of frauds by her employee, Gladys Pena, was error, as the judge himself conceded in a post-trial memorandum order. And second, if it was error, whether that error was harmless. The challenged instruction contravened this court's well-founded law, namely that Rule 404B does not exclude evidence of prior crimes of persons other than the defendant. Well, I'm not so sure it's fair to say that it contravened our well-established law. Yes, Rule 404B only applies to the defendant. That doesn't mean that the principles that animate 404B aren't perfectly sound evidence law that can be used by a district court. I mean, am I wrong? I don't think we have any case on point holding that a non-party cannot be the subject of a prior bad act's instruction such as Judge LaPlante gave in this case. I think that that is certainly the language in Gonzales-Sanchez. The language was reiterated in the Davis-David case in the Presidio. Yeah, but what those cases say is that 404B only applies to a defendant. But we have no case that says that the principle, that a district judge can't, in making a determination as to the relevancy of evidence, can't make a determination that using the principle that underlies 404B, that is that it's a leap in logic to say from a prior bad act that a propensity to commit similar bad acts exists, can't inform the jury along those lines. Judge Shelley, the real concern here is constitutional. This, I think, is an indication of the Supreme Court's concern in Holmes v. South Carolina. In that case, it was a question of whether evidence was going to be admitted at all. In this case, the question is how the evidence is going to be viewed by a jury. The presumption is that jurors follow instructions as given by the judge. The judge told them three different ways, three different times in his instruction, which they are presumed to follow, that they were not to consider Gladys Pena's obvious misconduct before she's employed at Maine Travel, while she's employed at Maine Travel, and when she goes down to New York and gets involved in a multimillion-dollar tax scam down there. They could not consider that as propensity evidence to show that she was the one. That's true, but they could consider it on the issue of the identity of the perpetrator. And I'm not sure I see the real difference between those two. I mean, that's what you wanted, really, was you were making an argument that she was the perpetrator. The judge said they could consider this evidence as to identity. The judge said that once. Judge LaPlante said it once, and he said it was for a limited purpose of deciding whether she had the opportunity to commit the acts  Then he says, you cannot consider it for any other purpose. He goes on, he talks about you can consider it only for credibility. You may not infer that simply because she committed the prior offenses, she also committed the offense for which she stands accused. So the one purpose he wanted it admitted was the identity of the perpetrator, so that instruction wasn't that there. The judge said it once, but isn't once enough? It's certainly more compelling that I should have been able to argue the propensity, that it would have significantly strengthened my argument as the alternative suspect. This was a miserable Dow case. Let me ask you this. The fact that some of these alleged acts of fraud were perpetuated after Ms. Pena had departed the area, do you think that was part of the judge's decision-making calculus? I doubt I don't know. But what I can say is the judge instructed the jurors that they were to consider each count separately. I'm not seeking a remand on count 11. That's a 2008 account. I have to concede the obvious, which is that Pena was no longer there and she couldn't have been the perpetrator of the claim for tax year 2007. But the jury is told they have to consider each count separately, and particularly as to counts 1 and 2, the evidence was certainly less than overwhelming that it was my client who submitted the actual documents. And the way it worked, this was electronic filing. The clients who came into Maine Travel and sat down and gave their information, they gave it to either Pena or they gave it to Ulloa. It's typed in. The clients don't actually know who actually filed, electronically filed the return itself. We know, you know from Pena's own conviction. She, in fact, filed those same kinds of returns and received herself well more than Ulloa. She did it exactly as the whole scheme of the Santa Barbara Bank and Trust enabled it to play out. All she had to do was put in the information and when it went out electronically, on the return, at the same time it went to the IRS, it also went to the bank in California. With the exception of the taxpayer who only identified the person he spoke with as Magdalena, the other taxpayers clearly indicated that their contact was with your client. Isn't that correct? That's correct, Your Honor. They said that they gave information to her. They don't know what was actually sent. There's no question that at least some of the returns were not what were shown to the clients initially. The completely fabricated returns were sent out that the bank authorized the payment and Pena herself, once she gets the authorization, all she has to do is put the pre-signed check blank into the printer at Main Travel and she prints checks in the client's name. She forged, in trial there's photographs of her in a bank, going to a bank in Massachusetts, submitting refund checks which have the client's reported endorsement, which she, in fact, forged. That's compelling evidence. But assuming Judge LaPlante is right, that he gave an erroneous instruction on 404B, isn't the real question here the overwhelming evidence that independently lies against your client, even if Ms. Pena also was involved in illegal acts? When you go through each of the counts, isn't there relatively overwhelming evidence as to each of the other counts? You challenge one, and I understand that. I think it's count eight. But as to the others, aren't there identification and backup documentation that would give independent basis such that finding of harmless error would be appropriate? I think given the standard that the government's got to prove their case beyond a reasonable doubt, my answer respectfully is no. But the government, of course, disputes, and I think with good reason, that that's the standard. I mean, if that were the standard, virtually every trial error would be converted to a Chapman beyond a reasonable doubt. I mean, this is simply an evidentiary ruling that was made, and I'm struggling with the notion that the Katiakos standard doesn't apply here. My position is that it does. I know what your position is, but you haven't cited us any cases where we, on trial error of this sort, error on a jury charge as to the use of evidence that's in the case, where we've ever applied anything except the Katiakos standard. Well, we've applied plain error sometimes, but the Katiakos standard rather than the Chapman beyond a reasonable doubt. I think the facts in this case are compelling. That's my position. I have very little time left. I'm not going to say too much more about the instruction except that even if, as Judge Selye says, the Katiakos standard applies, this is the kind of evidence that would have swayed a jury. The juries presumed the following instruction, and the propensity aspect was I should have been able to fully exploit that. The government's position is I was able to argue. Argument is not the same as a jury instruction. Just briefly with regard to the IRS agent, that goes to count eight, as you recognize. My position is that the evidence absent the improperly admitted so-called summary testimony of the IRS agent was not sufficient, that count eight should be reversed, vacated and reversed. And finally, I'm sorry, that goes to counts three and seven. And as to count eight, that's the count that you recognize. My position is that the evidence was not sufficient. Thank you. Thanks. Good morning. Seth A. Frame for the United States. The issue that Judge LaPlante took up I do think is at least a question that I couldn't find controlling First Circuit authority on, which is when bad acts committed by a witness, both some of which are impeachment and some of which come in as substantive evidence, how does a court draw the line about which of those bad acts can be used as substantive evidence and which are only used as impeachment? Because, of course, it all gets put in front of the jury, so it's not an admissibility question, but it's a jury instruction question. And I do think Judge LaPlante tried to draw, I think, the right line at the trial. Counsel, why wasn't this the picture perfect case for showing motive and opportunity at least prior to her departure so that it would come in as substantive evidence? Well, I think the mainline travel bad acts did come in as substantive evidence. So the crimes, the acts that she committed while she worked at mainline travel, which went to the opportunity to commit the crime and went to whether she was the criminal, that I think could be used as substantive evidence. I think where it gets a field is when you say, well, before she came to work at mainline travel, she had been involved in some fraud at Filene's. And then after she worked at mainline travel, she did some other different kind of fraud. Those are so far afield from the actual question of the case that that's no different than saying, hey, that person over there, they're a criminal too. They might have done it. And that's the line courts have drawn. The subsequent criminal fraud, though, was tax fraud. Different kind. Very different kind. Picking up checks from a bad postal worker. Just a very different kind of tax fraud than this. And then the other problem I see with that argument is that the court gave, Judge LaPlante gave a very limiting instruction, which could reasonably be read not to allow the use of that evidence as propensity and substantive. The mainline travel evidence? Yes. Well, he said it couldn't be used as propensity, but I think this gets to, well, but if it can be used for identity, what is really the difference between those two concepts? I mean, the idea is she was at mainline travel engaging in fraud. If you read the closing argument in this case, you're going to see that's the argument that was made. She was doing this at mainline travel. She did this too. The jury was told that her bad acts could not be used for them to assume that she had a propensity to commit this kind of act. The jury was instructed by the judge on that, and Judge LaPlante, in his post-trial order, recognized that he was wrong in giving that limiting instruction and only limiting it to identity and whatnot. It seems to me, I know you spent quite a bit of time in the brief arguing that we could hold otherwise on 404B, but isn't the real argument you want to make to us about the evidence that was there and talk to us, at least talk to me a little about why Mr. Lange isn't right that, in fact, it was an overwhelming evidence independent of that against you? Yes. I mean, Judge Mahoney, you're exactly right. I mean, the more interesting presidential legal question, I think, might be where this reverse 404B line fits into this court's cases. But to resolve this case, as Judge LaPlante did, it is a harmless error case. And I agree with Judge Selya that the lower that it's swayed the jury standard applies. But regardless, the facts are the same, regardless of what standard you ultimately decide to apply. And let me talk about those. You had witnesses provide direct testimony who apparently did not know each other, but all knew the defendant, and all said they met with her alone in a room with no other person there, and she explained to them how she could get them more money on their tax return by putting false information on that return. Multiple witnesses, and the only cross-examination of those witnesses was the suggestion that because they were not citizens, they would try to lie to curry favor with the government on fear of deportation or removal. So there was no real rebutting of those eight witnesses. Now, it was said it was Pena that was the defense. There's a problem with that defense that Judge Thompson talked about, which is for at least two of the counts, Pena was gone. There was a dispute between Pena and the defendant. When Pena was visiting the Dominican Republic, the defendant sent her sister down to the Dominican Republic to tell Pena, don't come back. Pena never does come back. Indeed, on two of those tax returns, there's a tax preparer ID number. That ID number did not exist when Pena worked at Mainline Travel. So she wouldn't have had access to that number, even if you wanted to hypothesize that she committed the crime from some other place, even though she never came back. But Mr. Lange has conceded that one, so talk about the ones he hasn't conceded. Well, you have 2008 ones, right, that we agree she committed. And then you have 2007 ones where you have multiple witnesses who come in and who don't know each other and say the same events, talk about the exact same events with the defendant alone in a room. You take all of that together. She clearly committed the 2008 ones. Six witnesses tell the same story about the 2007 ones. You can follow the money trail into accounts that are the defendant's. At that point, I think you do have an overwhelming case against the defendant. Because as I point out, when I talk about count eight, of course, the jury can use evidence of one as to the other, right? So when you take all of that together and know of real cross-examination and that the Pena defense doesn't make much sense in light of the fact that this crime continued after Pena left, that certainly undermines the notion that Pena was doing it in 2007 if she clearly wasn't doing it in 2008. So the government's case was strong in that you had these multiple witnesses saying the same thing. The defendant's case was weak because the Pena defense has a major flaw in it. And the centrality of the error under this court's harmless error way of thinking about it, it's not a particularly central error because I do think we can talk all day, right, about the propensity problem because it's interesting. But at the end of the day, I think there's this sense that when you allow the argument that you can argue who really did it. You can argue Pena really did it. That that argument was made. That argument was made with gusto. I think you're going to see when you look at the closing argument. That argument was made and that argument didn't work. This propensity argument I do think is a weaker argument than the argument that was made, which is she committed a similar crime while working in this place, had access to these computers on which the crime was committed, maybe had access to the bank account. All that was made and yet that didn't work. And so now the argument is, well, I should have been able to say she committed the Filene's fraud before and she committed the other fraud in New York after. Well, I don't know that that's really as central as what was argued, which was at mainline travel she committed this crime. So that's the government's harmless error argument. As to count eight, I think I've already referenced the point that even though the witness in that one did not point out the defendant in court, he did say her name was Magdalena, the other eight witnesses had testified that Magdalena was the person that they had worked with, did make the in-court identification. And the story, the version of events that Mello told was essentially the same as was told by those other witnesses. So I think the jury was able to say, okay, the Magdalena that Mello was talking about is the same person that the other witnesses made the in-court identification of. And as to the summary witness testimony, honestly, that's a close call whether those two points should have been stricken. In tax cases, this court has been a little more charitable in allowing summary witness testimony, whether this is going to really qualify as the kind of complex case that this court has meant when it's put that imprimatur on summary witnesses. I think it's a close question, but I think the harmless error question here is not close at all. Didn't each of the areas that he testified in summary fashion come in independently as well? It did. So there's no new evidence that came through, which is why it's harmless, because the jury had heard all of this evidence already. Most of what the summary witness testified to was appropriate summary witness testimony. There were a couple snippets that are on the line, but all the other evidence I've already talked about, I think, clearly makes that harmless, and that's clearly not subject to the constitution. I thought there was a suggestion in Mr. Lang's argument that the summary witness may have been stronger in his identification of the defendant on count eight than the mere reference to Magdalena. Sorry, the summary witness just talked about where the money went, so I don't know how that went. Okay, so if I drew that impression from Mr. Lang's argument, you say it's not there. I don't think you're going to see the record bears that out. If the court doesn't have any further questions, I'll rest my brief. Thank you very much.